IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARTINA SQUIRE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MARYLAND TRANSIT ADMINISTRATION,** *et al.*<br><br>**Defendants.** | **Civil No. 1:22-cv-02493-JRR** |

**MEMORANDUM OPINION**

This matter comes before the court on Defendants Maryland Department of Transportation ("MDOT"), Maryland Transit Administration ("MTA"), and the State of Maryland's Motion to Dismiss. (ECF No. 28; the "Motion.") The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021).

**BACKGROUND**[1]

Plaintiff Martina Squire filed this action alleging Defendants discriminated and retaliated against her during her employment at MTA in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and MD. CODE ANN., STATE GOV'T §§ 20-601, *et seq.* ("FEPA"). (ECF No. 13.) Plaintiff alleges that MDOT and the State of Maryland are vicariously liable for the actions of MTA because MTA is a division of MDOT and a Department of the State of Maryland.[2] (ECF No. 13 ¶ 3.)

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint. (ECF No. 13.)
[2] As set forth *infra*, Plaintiff concedes that her claims against MDOT and the State should be dismissed. (ECF No. 35 at 2.)

On January 10, 2005, Plaintiff began working at MTA as a part-time Information Coordinator. (ECF No. 13 ¶ 4.) In April 2017, Plaintiff was promoted to Acting Chief Supervisor for the Light Rail Operations Control Center. *Id.* ¶ 6. Five months later, in October 2017, Plaintiff was demoted to Transportation Supervisor. *Id.* On or about October 4, 2017, Plaintiff filed a complaint with MTA's Fair Practice Office alleging that her demotion was due to her disability. *Id.* ¶ 7. Additionally, Plaintiff alleges that she filed two additional complaints—one in April 2018 alleging harassment and retaliation, and one in April 2019 alleging harassment and wrongful denial of leave. *Id.* ¶¶ 9, 11.

In January 2018, Plaintiff began experiencing loss of vision in her left eye. (ECF No. 13 ¶ 8.) In July 2019, a doctor examined Plaintiff's eye and determined that her left eye vision was continuing to deteriorate. *Id.* ¶ 16. Subsequently, MTA referred Plaintiff for an Initial Workability Evaluation with Dr. Williams. *Id.* ¶ 17. Plaintiff alleges that "Dr. Williams determined that due to her left eye vision she was unable to return to work as a Light Rail Supervisor and that she is 'unable to safely, consistently, and reliably perform her essential job duties with or without a reasonable accommodation in the near or foreseeable future.'" *Id.* ¶ 18.

On July 12, 2019, MTA notified Plaintiff by letter that "in light of her disability, [Plaintiff] had three options: (1) request a reasonable accommodation under the Americans with Disabilities Act by providing a list of reasonable accommodations that would allow [Plaintiff] to perform ALL of the essential functions of [her] current job; (2) voluntarily resign her position; or (3) seek a disability pension." (ECF No. 13 ¶ 19.) Plaintiff alleges on three separate occasions she requested MTA place her in a different position so that she could continue to perform despite her disability. *Id.* ¶ 21. In all three instances, MTA notified her that there were no available positions. *Id.*

Plaintiff alleges that MTA never offered her a different position despite other positions being available that she could perform. *Id.* ¶ 22.

On July 17, 2019, Plaintiff attended a meeting with Stacey Koutroumpis, MTA's manager of medical services, and Vanessa Harrison.[3]  (ECF No. 13 ¶ 23.)  Plaintiff alleges that she informed them of her desire to remain at MTA in another position and of her ability to perform other work. *Id.* ¶¶ 24-26.  Plaintiff alleges that Ms. Koutroumpis stated "that the ADA did not require MTA to offer [Plaintiff] another position and that [Plaintiff] could only continue working for MTA if she could identify reasonable accommodations for her current position."  *Id.* ¶ 27.  Plaintiff alleges that she, therefore, had no choice but to retire because MTA was not going to accommodate her or allow her to continue employment. *Id.* ¶ 30.  Plaintiff's retirement from MTA became effective on July 13, 2019.  *Id.* ¶ 31.

On or about April 30, 2020, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that the MTA forced her to retire due to her disability.  (ECF No. 13 ¶ 32.)  By determination letter issued October 28, 2021, the EEOC found "reasonable cause to believe that [Plaintiff] was subjected to involuntary retirement in violation of the ADA."  *Id.* ¶ 33.  On December 3, 2021, after determining that conciliation would not be successful, the EEOC referred the matter to the United States Department of Justice ("DOJ").  *Id.* ¶ 35.  Plaintiff received a Right to Sue letter from the DOJ on April 4, 2021.  *Id.* ¶ 36.

On July 1, 2022, Plaintiff filed a Complaint against Defendants MDOT, MTA, and the State of Maryland in the Circuit Court for Baltimore City, Maryland.  (ECF No. 1 ¶ 1.)  On September 29, 2022, Defendants removed the case to this court.  (ECF No. 1.)  The Complaint sets forth four counts, each plead against all Defendants: (I) Violations of the ADA, 42 U.S.C. §§

---

[3] The Complaint does identify Ms. Harrison's title.

12101, *et seq.*; (II) Retaliation under the ADA; (III) Violations of the FEPA, MD. CODE ANN. STATE GOV'T §§ 20-601, *et seq.*; and (IV) Retaliation under the FEPA.  (ECF No. 13 at 6-11.) Plaintiff seeks: (i) compensatory damages; (ii) punitive damages; (iii) reasonable legal fees and expenses; and (iv) any other relief the court deems just and proper.  *Id.* at 12.

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 28-1 at 4, 6.)  Defendants argue that Plaintiff's ADA claims—Counts I and II—are barred by sovereign immunity.  *Id.* at 7.  Additionally, Defendants argue that all of Plaintiff's claims against MDOT and the State should be dismissed because Plaintiff was not an employee of the State or MDOT.  *Id.* at 9.  Further, Defendants maintain that Plaintiff failed to exhaust her administrative remedies as to MDOT and the State.  *Id.*  Defendants also argue that Plaintiff's FEPA claims are time barred.  *Id.* at 11.  Lastly, Defendants argue that Plaintiff fails to state a claim for all counts.  *Id.* at 12.  Plaintiff concedes that her claims against MDOT and the State should be dismissed.  (ECF No. 35 at 2.)  Therefore, the court addresses the Motion only with respect to Defendant MTA and dismisses Plaintiff's claims against MDOT and the State.

## LEGAL STANDARDS

### Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction."  *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction."  *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019).  Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge.  *Id.*  A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction."  *Id.*  A factual challenge asserts "that the

4

jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendant MTA raises a facial challenge to the court's subject matter jurisdiction, asserting that the doctrine of sovereign immunity bars Counts I and II. The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). Because sovereign immunity is akin to an affirmative defense, a defendant bears the burden of demonstrating that sovereign immunity exists. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

**Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint. It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the

plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## CONSIDERATION OF EXHIBITS

Defendants attach one exhibit to their Motion: Exhibit 1 – EEOC Determination Letter. (ECF No. 28-2).

As detailed above, Defendants raise a facial challenge to subject matter jurisdiction. Accordingly, Plaintiff enjoys the procedural protections afforded by a 12(b)(6) motion.  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint.  A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212,

234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment. *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites."). "In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)). Courts also routinely consider EEOC filings and records. *Dyer v. Maryland State Board of Education*, 187 F. Supp. 3d at 608; *Whittington v. N.C. Dep't of Juvenile Justice & Delinquency Prevention*, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006).

     Exhibit 1 is an EEOC determination letter from the underlying EEOC proceeding. Because Plaintiff's entitlement to sue arises from issuance of the EEOC letter and she makes no authenticity challenge, the court considers it without converting the Motion into one for summary judgment.

## ANALYSIS

I. **Claims against MDOT and the State of Maryland**

Defendants argue that Plaintiff's claims against MDOT and the State of Maryland should be dismissed because Plaintiff was not an employee at MDOT or the State. (ECF No. 28-1 at 9.) Additionally, Defendants argue that Plaintiff failed to exhaust her administrative remedies as to MDOT and the State. *Id.* As mentioned above, Plaintiff concedes that all claims against MDOT and the State of Maryland should be dismissed. (ECF No. 35 at 2.) Accordingly, the Motion will be granted as to MDOT and the State of Maryland.

II. **12(b)(1) Motion – Sovereign Immunity**

Defendants argue that Plaintiff's claims under the ADA are barred by sovereign immunity. (ECF No. 28-1 at 7.)

The concept of sovereign immunity involves: (1) Eleventh Amendment immunity and (2) a state's broader sovereign immunity. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015). "State sovereign immunity is 'based on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.'" *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005) (quoting *Nevada v. Hall*, 440 U.S. 410, 416 (1979)). "In contrast, by the terms of the Eleventh Amendment, an unconsenting state is immune from suit filed in federal court by a citizen of another state." *Id.* "Thus, Eleventh Amendment immunity is but an example of state sovereign immunity as it applies to suits filed in federal court against unconsenting states by citizens of other states." *Id.* In the instant case, Defendant MTA asserts Eleventh Amendment immunity. (ECF No. 28-1 at 7.)

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

8

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[U]nder the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents." *Dixon v. Balt. City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003). "This protection extends to state agencies," including the MTA. *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *see Bugg v. Md. Transp. Auth.*, 31 Md. App. 622, 633 (1976) (explaining that "[i]t is beyond question that the Maryland Transportation Authority is an agency of the State and as such enjoys the same sovereign immunity as does the State . . ."). That notwithstanding, "[t]he Eleventh Amendment bar to suit is not absolute" and the Fourth Circuit has recognized three exceptions:

> First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority . . . ." Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law . . . ." Third, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court."

*Lee-Thomas v. Prince George's Cnty Pub. Schools*, 666 F.3d 244, 248 (4th Cir. 2012) (internal citations). There is no dispute that the first two exceptions do not apply in this case.[4] With regard

---

[4] The first exception is not applicable to this case because sovereign immunity has not been abrogated for ADA Title I claims. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360 (2001) (holding that the Eleventh Amendment bars suits against states to recover money damages under Title I of the ADA); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (explaining that "[s]overeign immunity has not been abrogated for . . . Title I ADA claims"). With regard to Plaintiff's retaliation claim under Title V of the ADA, "neither the Supreme Court of the United States nor the Fourth Circuit has addressed whether Congress validly abrogated sovereign immunity under Title V of the ADA." *Shannon v. City of Richmond Va. Sheriff's Off.*, No. 3:22cv460, 2023 WL 2720806, at *8 (E.D. Va. Mar. 30, 2023). However, courts have "concluded that Eleventh Amendment immunity applies to retaliation claims brought under Title V of the ADA when such claims are predicated on an alleged violation of Title I of the ADA." *Id.*; *see Adeyemi v. Dep't of Pub. Safety and Corr. Servs.*, No. ELH-19-3207, 2021 WL 1785141, at *7 (D. Md. May 5, 2021) (determining that the plaintiff's retaliation claim is predicated on alleged violations of Title I and therefore, because "the underlying Title I claim is barred by sovereign immunity so too is his Title V claim."). Plaintiff's retaliation claim is predicated on alleged violations of Title I of the ADA. Plaintiff alleges that she was retaliated against for filing complaints alleging employment discrimination. (ECF No. 13 ¶ 53.) Because Plaintiff's Title V claim is predicated on Title I of the ADA, the first exception also does not apply to Count II. With

to the third exception, Plaintiff argues that the State waived its sovereign immunity in its own courts with respect to ADA claims through enactment of the Maryland Tort Claims Act, MD. CODE ANN., STATE GOV'T §§ 12-101, *et seq.* ("MTCA"). (ECF No. 35 at 5.) Because the State waived sovereign immunity in its own courts, Plaintiff argues that the waiver travels with Defendants to federal court; which is to say that Defendants' removal of the action to federal court effects a waiver of Eleventh Amendment immunity. *Id.* at 7.

### A.     **MTCA as a Waiver**

"Whether a state has waived its sovereign immunity in a specific instance 'is a matter of state law.'" *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 450 (D. Md. 2014) (quoting *Lee-Thomas*, 666 F.3d at 249 (4th Cir. 2012)); *see Lee-Thomas*, 666 F.3d at 249 (recognizing "that the question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling'" (quoting *Palmer v. Ohio*, 248 U.S. 32, 34 (1918)). Maryland has "adopted a two-part test to determine whether sovereign immunity applies in a specific case: (1) does the entity asserting sovereign immunity qualify, and (2) has the Legislature waived the immunity." *Id.* In analyzing the second factor, "Maryland courts 'have strictly construed such waivers in favor of the sovereign,' interpreting any waiver provisions narrowly." *Id.* (quoting *Bd. of Educ. of Balt. Cty. v. Zimmer–Rubert*, 409 Md. 200, 212 (2009)). Plaintiff does not dispute that MTA is an entity entitled to sovereign immunity. Therefore, the court's analysis will focus on the second factor—whether Maryland waived its sovereign immunity through enactment of the MTCA.

The MTCA provides that "[s]ubject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as

---

regard to the second exception, Plaintiff seeks monetary damages, not injunctive relief. Therefore, the second exception does not apply in this case.

to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection." MD. CODE ANN., STATE GOV'T § 12-104. To determine whether the MTCA constitutes a waiver of MTA's sovereign immunity as to Plaintiff's ADA claims, the court applies the general rules of statutory interpretation. *Zimmer-Rubert*, 409 Md. at 214. In *Zimmer-Rubert*, the Maryland Supreme Court explained:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.
>
> If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for the Legislature is presumed to have meant what it said and said what it meant.
>
> Nevertheless, we may resort to legislative history to ensure that our plain language interpretation is correct. We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.

*Zimmer-Rubert*, 409 Md. at 214-15 (internal citations and quotations omitted).

Relying on *Royster v. Gahler*, 154 F. Supp. 3d 206 (D. Md. 2015), Plaintiff suggests that her ADA claims come within the scope of a "tort action" and therefore, the MTCA applies. (ECF No. 35 at 5.) The court disagrees. Plaintiff's reliance on *Royster* is misplaced. In *Royster*, the plaintiff filed an ADEA claim against the Sheriff of Harford County and the State of Maryland. 154 F. Supp. 3d at 212. As Plaintiff notes, the court concluded that "the notice requirement of the MTCA is applicable to an employment discrimination claim against the State." *Id.* at 220. The *Royster* court only considered the statutory notice requirement; the court did not address the waiver

of sovereign immunity. *Id.* at 217-20. Accordingly, the court does not find *Royster* instructive in this case. On this issue, the court finds helpful instruction from *Bozarth v. Md. State Dep't of Educ.*, No. DLB-19-3615, 2021 WL 1225448 (D. Md. Mar. 31, 2021).

In *Bozarth*, the plaintiff argued that the State of Maryland waived its Eleventh Amendment immunity by (1) waiving its sovereign immunity as to employment discrimination claims in its own state courts through enactment of the MTCA and (2) "having waived its immunity in its own courts, waived its Eleventh Amendment immunity through its litigation conduct by voluntarily removing" the case from state to federal court. 2021 WL 1225448, at *6. The *Bozarth* court found that the language of the MTCA "suggests that the State has not waived its common law sovereign immunity with respect to claims arising under Title I of the ADA . . . ." *Id.* at *7.

The *Bozarth* court succinctly explained the history of the MTCA:

> The legislature first enacted the MTCA in 1981 for the purpose of waiving the immunity of the State and its officials in certain tort actions. That Act limited the waiver to actions based on: negligent maintenance or operation of a motor vehicle by a state employee; negligence of a health care employee of a state facility or institution or by a doctor, nurse, dentist, or related health care personnel employed by the state; patently dangerous conditions of a building, structure, or other public improvement owned and controlled by the state; negligent use or maintenance of state property by a state employee; defective, unsafe, or dangerous conditions of any street, alley, sidewalk, or highway owned and controlled by the state if constructive or actual notice of the condition existed; and negligent failure of a state officer or employee to properly supervise an activity at a state park or recreation facility. In 1984, the legislature added that a claim could be brought for [t]he negligent maintenance or operation, by state personnel, of any self-propelled vehicle, including a vehicle that operates on rail, through water, or in air, or of an attachment to a vehicle. In 1985, the MTCA was amended, and the enumerated list of torts was eliminated. The new statute read: Subject to the exclusions and limitations in this subtitle, the immunity of the State AND of its units is waived as to a tort action, in a court of the State, to the extent of INSURANCE coverage under Article 95, § 27(D) OF THE CODE.

12

>That expansion—however significant—did not bespeak an intent to subject the State to suit for anything other than a tort. The amendment suggests that, rather than create a remedy for victims of some government tortfeasors but not others, the State intended to generalize the statute's applicability to the class of actions generally described as torts. Indeed, had the legislature intended its waiver of sovereign immunity in STATE GOV'T § 12-104 to include a waiver for employment discrimination actions, what purpose MD. CODE ANN., STATE GOV'T § 20-903, "Waiver of State's sovereign immunity in employment discrimination cases," would serve is not clear. That waiver is limited to employment discrimination case[s] under th[at] title. That title is the MFEPA. The State has not moved to dismiss [the plaintiff's] claims arising under the MFEPA on sovereign immunity grounds.[5]

*Bozarth*, 2021 WL 1225448, at *8 (internal citations and quotations omitted).  Accordingly, the court dismissed the plaintiff's disability discrimination claim under Title I of the ADA on the basis that the State retained immunity under the Eleventh Amendment and the common law principle of sovereign immunity.  *Id.* at *11.

The instant case is similar to *Bozarth*.  Here, Plaintiff suggests that the MTCA acts as a waiver of the State's sovereign immunity as to her disability discrimination claims under Title I and V of the ADA.  This is incorrect.  The plain language of the MTCA provides that it applies to tort actions.  MD. CODE ANN., STATE GOV'T § 12-104.  Plaintiff provides no authority that a violation of the ADA, a federal statute, falls within the definition of a tort under Maryland law.[6] Plaintiff's ADA claims do not relate to a tort action, they are solely based on federal employment law.  Accordingly, the State has not waived its sovereign immunity in its own courts as to Plaintiff's ADA claims through enactment of the MTCA.

---

[5] The instant Motion does not seek dismissal of Plaintiff's FEPA claims on sovereign immunity grounds.  (ECF No. 39 at 4, n.3.)

[6] Plaintiff cites to *Carter v. Maryland*, No. JKB-12-1789, 2012 WL 6021370 (D. Md. Dec 3, 2012).  *Carter* further supports that the MTCA waives immunity for tortious conduct, not violations of the ADA.  *Id.* at *6; *see Sutton v. Dep't of Human Services*, No. RDB-19-0542, 2019 WL 4447379, at *3 (D. Md. Sept. 17, 2019) (noting that "[t]he MTCA waives immunity to tort actions brought in state court; it does not waive immunity as to all causes of actions or to claims brought under federal law").

B.     **Removal as a Waiver**

Citing to *Lapides v. Board of Regents*, 535 U.S. 613 (2000), Plaintiff argues that because the State waived its sovereign immunity in state court, the waiver travels to this court. (ECF No. 35 at 7.) As discussed in Section II.A, the court finds that the State did not waive its sovereign immunity in state court; therefore, the State did not waive its Eleventh Amendment immunity by removing the case to federal court. *Bozarth*, 2021 WL 1225448, at *9 (concluding that "the State did not waive its sovereign immunity with respect to [Title I of the ADA]" and therefore, "the State did not waive its Eleventh Amendment immunity by removing [the case] to federal court"); *Mattison v. Md. Transit Admin.*, No. JKB-21-00168, 2021 WL 4503566, at *4 (D. Md. Oct. 1, 2021) (holding that MTA's removal of the case to federal court does not waive sovereign immunity).

In *Lapides*, the Supreme Court addressed the issue of "whether a State waives [Eleventh Amendment] immunity when it removes a case from state court to federal court." 535 U.S. at 618-19. In that case, the plaintiff brought an action in state court against the State of Georgia and other defendants. *Id.* at 616. The defendants removed the case to federal court and allowed that, although "a state statute had waived sovereign immunity from state-law suits in state court," the Eleventh Amendment protected them from action in federal court. *Id.* The *Lapides* Court explained:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the Judicial power of the United States extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the Judicial power of the United States extends to the case at hand.
>
> In this case, the State was brought involuntarily into the case as a defendant in the original state-court proceedings. But the State then voluntarily agreed to remove the case to federal court. In doing so, it voluntarily invoked the federal court's jurisdiction. And unless we

14

>are to abandon the general principle just stated, or unless there is something special about removal or about this case, the general legal principle requiring waiver ought to apply.

535 U.S. at 619 (internal citations and quotations omitted). The *Lapides* court held that "a removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum." *Id.* at 624.

As the Fourth Circuit noted in *Stewart v. North Carolina*, "the Court in *Lapides* did not resolve the effect, if any, of a state's voluntary decision to remove an action from which it would have been immune in its own courts." 393 F.3d 484, 488-89 (4th Cir. 2005); *see Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (holding that "[i]n this circuit, a state's removal of a suit to federal court waives sovereign immunity only if the state has consented to suit in its own courts"); *Bozarth*, 2021 WL 1225448, at *9 (noting that "the Supreme Court made clear that in *Lapides* it considered—and considered only—whether a State, by virtue of voluntary removal, waived its Eleventh Amendment immunity with respect to state-law claims from which it had already waived sovereign immunity in its own court"). While *Stewart* is confined to the "principle of state sovereign immunity," the court has relied upon the Fourth Circuit's reasoning in the context of Eleventh Amendment immunity. *See Bozarth*, 2021 WL 1225448, at *10 (explaining that "the Fourth Circuit's reasoning in *Stewart* suggests that, in a case where the State has not waived its common law immunity in its own courts, it should not waive its Eleventh Amendment immunity by removing the case to federal court"). In *Bozarth*, Judge Boardman explained:

>*Stewart*'s holding is confined to the common law doctrine of sovereign immunity and thus is not directly on point as to the Eleventh Amendment question. Yet, the Fourth Circuit's reasoning in *Stewart* suggests that, in a case where the State has not waived its

>common law immunity in its own courts, it should not waive its Eleventh Amendment immunity by removing the case to federal court. The Fourth Circuit distinguished *Stewart* from *Lapides* on the ground that, because North Carolina had not consented to suit in its own courts, as Georgia had in *Lapides*, the Supreme Court's concern over the risk of inconsistency and unfair tactical advantage in *Lapides* did not apply. Here, as in *Stewart*, had the State remained in state court, it would not have been forced to defend these two claims for lack of immunity. Accordingly, *Stewart* suggests the State's removal should not affect its ability to raise a defense of immunity now.

2021 WL 1225448, at *10.

The concerns raised in *Lapides* regarding the risk of inconsistency and unfair tactical advantage are not present here. In this critical regard, the instant case is materially distinguishable from *Lapides*. Here, in contrast to *Lapides*, the motion to dismiss on the basis of sovereign immunity is limited to Plaintiff's federal claims in which the State has not waived its sovereign immunity. Defendants did not remove this case to federal court to revive its immunity it had waived by statute in state court. Stated differently, Defendants would have been entitled to sovereign immunity regardless of the forum. Plaintiff does not provide, and the court is not aware of, any authority concluding that the State has waived its sovereign immunity as to ADA claims brought in Maryland courts. *Bozarth* and *Stewart* compel the conclusion that removal in the instant case does not affect Defendants' sovereign immunity defense.

Accordingly, the court concludes the State did not waive Eleventh Amendment immunity by removal of this case to federal court; instead, the State retains its sovereign immunity as to Plaintiff's ADA claims—Counts I and II. The Motion will be granted as to Counts I and II.

**II.     State Claims**

Plaintiff requests that the court remand this case to state court if the court dismisses the ADA claims. (ECF No. 35 at 7.) Defendants do not address this argument.

"Where a district court dismisses all federal claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure . . . the district court is precluded from exercising supplemental jurisdiction over the remaining state-law claims." *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021); *see Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006) (explaining that "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety"); *Mains v. Citibank, N.A.*, 852 F.3d 669, 680 (7th Cir. 2017) (concluding that "[w]hen a district court does not have subject-matter jurisdiction over federal claims, it cannot exercise supplemental jurisdiction over any state claims under 28 U.S.C. § 1367"); *Crosby v. City of Gastonia*, 635 F.3d 634, 644 (4th Cir. 2011) (explaining that "[h]ad the federal claims in this matter truly been susceptible to dismissal solely for lack of subject matter jurisdiction, as the district court supposed, its discretionary exercise of supplemental jurisdiction over the state-law claims would have been problematic").

In view of the court's conclusion above, the only remaining claims in this case are Counts III and IV, the state law FEPA claims. Accordingly, the remaining state law claims—Counts III and IV—will be remanded to the Circuit Court for Baltimore City. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## **CONCLUSION**

For the reasons set forth herein, the Motion to Dismiss (ECF No. 28) will be granted as to Counts I through IV against Defendants MDOT and the State of Maryland; and granted as to Counts I and II against Defendant MTA. As a result, the court lacks subject matter jurisdiction over the remaining counts in the Complaint – Counts III and IV against Defendant MTA.

Therefore, the court declines to rule on the substance of the Motion as to Counts III and IV as against Defendant MTA and remands this action to the Circuit Court for Baltimore City.

A separate order follows.

/S/

_____
Julie R. Rubin
United States District Judge

July 18, 2023